UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SAMANTHA ASHLEY QUARANTA,   )
                             )
        Plaintiff            )
                             )
v.                           )   No. 1:13-cv-350-JDL
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security, )
                             )
        Defendant            )

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the basis that the administrative law judge erred in determining that she did not have a severe mental impairment. *See* Statement of Specific of Errors ("Statement of Errors") (ECF No. 13) at 1-7. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of asthma, Finding 2, Record at 13; that she retained the residual functional capacity ("RFC") to

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on July 28, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

perform a full range of work at all exertional levels except that she should avoid even moderate exposure to temperature extremes, humidity, and pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation so as not to aggravate her asthma, Finding 4, *id.* at 15; that, considering her age (20 years old, defined as a younger individual, on the date that her application was filed, March 18, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 17; and that she, therefore, was not disabled since March 18, 2010, the date that she filed her application, Finding 10, *id.* at 18. The Appeals Council declined to review the decision, *id.* at 2-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The administrative law judge found that the plaintiff had one medically determinable impairment, personality disorder, which was nonsevere in that it had caused no more than mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. *See* Record at 14; 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.") (citation omitted).

The plaintiff asserts that her mental health impairments of attention deficit hyperactivity disorder ("ADHD"), depression, personality disorder, and bipolar disorder cause more than a slight abnormality and clearly have more than a minimal effect on her capacity to work. *See* Statement of Errors at 7. She points out that she testified at hearing that she had difficulties being around people, controlling her moods, controlling her temper (as a result of which she had

thrown things and punched doors), paying attention and focusing, and maintaining personal relationships. *See id*. at 2; Record at 41-45. She adds that the evidence of record included:

1. A history of treatment for mental health issues by Kennebec Behavioral Health and by her primary care practitioner, documenting problems with mood, irritability, lability, inattention, distractibility, impulsivity, anger, and aggression, *see* Statement of Errors at 2, 6;

2. A September 19, 2011, psychological evaluation by Richard Thomas, Ph.D., concluding, *inter alia*, that she "appear[ed] to have a complex PTSD (post-traumatic stress disorder) syndrome, involving PTSD, depression (major depressive illness, recurrent, and nonpsychotic type), and borderline personality disorder[,]" which Dr. Thomas "suspect[ed] [was] of mild severity[,]" she "also appear[ed] to have attention deficit hyperactivity disorder, inattentive type, and it [was] possible that her ADHD account[ed] for some of [her] borderline personality symptoms, such as her mood lability and hot temper." *Id*. at 3 (quoting Record at 462);

3. A May 26, 2010, psychological evaluation by agency consulting examiner Donna M. Gates, Ph.D., finding "no clinically significant mental health limitations other than a pronounced borderline personality disorder[,]" but noting, *inter alia*, that it "appear[ed] that [the plaintiff's] willingness to follow work rules [would] be compromised by disregard for social norms[,]" her borderline personality disorder was "likely to affect her ability to relate well to coworkers, supervisors and the public[,]" and her moodiness and irritability might "affect her ability to behave in an emotionally stable manner, especially as it involves interpersonal conflict with others[,]" and recommending that, should the plaintiff receive disability benefits, a representative payee be assigned "given her limited history of independent functioning." *Id*. at 4-5 (quoting Record at 397-98); and

4. A March 9, 2011, psychological evaluation by a second agency consulting examiner, Gary Rasmussen, Ph.D., finding, *inter alia*, that "[e]mployment conflicts are likely to be secondary to personality traits that can be addressed through psychotherapy[,]" and the plaintiff "could not be expected to be able to independently manage any award of funds in her own interest secondary to her immaturity and dependency on others." *Id*. at 5 (quoting Record at 430).

**A. No Step 2 Error**

Nonetheless, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 15) at 2, while the plaintiff points to portions of the record that arguably suggest greater than mild limitations, the record as a whole provides substantial evidence in support of the administrative law judge's Step 2 finding.

The administrative law judge gave significant weight to the opinions of two nonexamining agency psychologists, Brian Stahl, Ph.D., and Mary A. Burkhart, Ph.D., both of whom found that the plaintiff had only one medically determinable mental health impairment, personality disorder (either borderline or not otherwise specified), which caused no more than mild limitations in any functional area. *See* Record at 17, 400, 407, 410, 412, 432, 439, 442, 444. She gave less weight to the Thomas report because it relied mostly on the plaintiff's reported diagnoses and was not based on mental status evaluation or records provided for review, and more weight to the opinion of Dr. Rasmussen because, as an agency consultant, he was more familiar with Social Security disability regulations, including the definition of objectively recognizable diagnoses. *See id*. at 17. She failed to mention the Gates report, *see id*. at 16-17, which counsel for the commissioner conceded at oral argument was error. However, as counsel

for the commissioner contended, the error was harmless because both Drs. Stahl and Burkhart took that report into consideration.

Dr. Stahl, whose report is dated June 4, 2010, had the benefit of review of underlying treatment notes of both Kennebec Behavioral Health and the plaintiff's primary care provider for the period through December 11, 2009, as well as Dr. Gates' report. *See id*. at 412. He noted that Dr. Gates had assessed a Global Assessment of Functioning, or GAF, score of 70, that the plaintiff was not taking psychiatric medication, and that she was not then in treatment. *See id*.[2] Dr. Burkhart, whose report is dated March 10, 2011, had the benefit of review of the evidence considered by Dr. Stahl as well as the later Rasmussen report. *See id*. at 444. She indicated that Dr. Rasmussen's report supported the findings of Dr. Gates, that the plaintiff's allegations and statements of limitations were not credible given those findings, and that the plaintiff's sole medically determinable mental health impairment of personality disorder caused only nonsevere limitations. *See id*.

"[T]he amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM–IV–TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV–TR at 34 (boldface omitted).

6

this is not an ironclad rule.") (citations and internal quotation marks omitted). This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

At oral argument, the plaintiff's counsel contended that the Stahl and Burkhart reports cannot stand as substantial evidence that his client's mental impairments were nonsevere because, unlike Drs. Thomas, Gates, and Rasmussen, they did not personally meet with or examine the plaintiff. Yet, the existence of an examining or treating relationship is merely one of several factors relevant to the assessment of expert opinions. *See, e.g.*, 20 C.F.R. § 416.927(c) (factors relevant to assessment of medical opinions include (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others). That an expert has not personally examined a claimant does not, standing alone, invalidate his or her opinion as substantial evidence in support of an administrative law judge's findings.

In this case, after taking into account the totality of the evidence, including that postdating the Stahl and Burkhart reports, the administrative law judge supportably concluded that the plaintiff's medically determinable mental impairment was nonsevere.[3]

The administrative law judge reasonably construed the Rasmussen report as consistent with a finding that the plaintiff retained the capacity to perform basic mental work demands. *See* Record at 14; Social Security Ruling 85–15 ("SSR 85–15"), reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (1992), at 347 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."); Record at 429-30 (notation by Dr. Rasmussen that the plaintiff "appear[ed] to be able to perform such basic job related psychological skills as communication, understanding, and following instructions[,]" "ought to be able to work with supervisors, coworkers, and customers[,]" "ought to be a reliable employee in terms of work productivity and work attendance[,]" and "ought to be able to maintain pace and persistence on the job").

She also correctly pointed out that Dr. Rasmussen concluded that the plaintiff did not appear to be suffering from an affective disorder and questioned the reliability of her self-reporting regarding her psychological functioning, *see id.* at 16, 429, and Dr. Thomas (whose

---

[3] While the plaintiff claims that she suffers from several mental impairments, which collectively should have been determined to be severe, *see, e.g.*, Statement of Errors at 7, she does not explain why, in her view, the administrative law judge's finding of only one medically determinable mental impairment is unsupported by substantial evidence, *see generally id*. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96–7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2013) at 133.

report postdated those of Drs. Stahl and Burkhart) characterized the plaintiff's personality disorder as "of mild severity[,]" *id.* at 14 (quoting Record at 462), indicated that the symptoms she described did not meet criteria for bipolar illness or anxiety disorder, *see id.* at 16, 459, 461, and, although he diagnosed her with ADHD, found that she had only some difficulty with concentration and no notable hyperactivity, *see id.* at 16, 462.

The administrative law judge acknowledged that, during a February 2, 2012, intake assessment (which also postdated the Stahl and Burkhart reports), Winola Barter, LCPC, of Kennebec Behavioral Health assessed the plaintiff with a GAF score of 45. *See id.* at 16, 503.[4] However, she did not find that score credible, given that it was assessed by a non-acceptable medical source at intake, with no follow-up with more intensive treatment, and, during intake assessment, the plaintiff demonstrated no problems with community living skills and had no history of psychiatric hospitalizations. *See id.* at 16, 500, 504.[5] The plaintiff does not argue that these were invalid bases on which to discount that one-time score. *See generally* Statement of Errors.

Finally, the administrative law judge explained why, in her view, evidence of the plaintiff's activities cut against a finding of severe mental impairment. *See* Record at 16. She observed, among other things, that in April 2012, the plaintiff's primary care practitioner

---

[4] A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted).

[5] Ms. Barter, a licensed clinical professional counselor, is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment, 20 C.F.R. § 416.913(a), although the commissioner may use evidence from such sources "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work[,]" *id.* § 416.913(d). As the commissioner points out, *see* Opposition at 9, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals[,]" Social Security Ruling 06–03p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 06–03p"), at 332 (internal quotation marks omitted).

endorsed her plan to start college in the fall, *see id*. at 16, 507, Dr. Thomas noted her interest in creative pursuits, including music, writing short stories and poetry, and designing graphics and reading, *see id*. at 16, 458, and, per behavioral treatment notes, she was going out socially as much as twice a month, *see id*. at 16, 496. She pointed out that the record evidence documented that the plaintiff had recommenced mental health treatment only recently after a substantial period without treatment and had stopped taking prescribed medication. *See id*. at 16, 429, 459.

At bottom, this is a case in which the administrative law judge resolved conflicts in the evidence as to whether the plaintiff had a severe mental health impairment, as she was tasked to do. *See, e.g.*, *Rodriguez,* 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the administrative law judge], not for the doctors or for the courts."). For the reasons discussed above, she reached a conclusion that was supported by substantial evidence.

### B. Any Error Harmless

In any event, as the commissioner notes, *see* Opposition at 2, even assuming that the administrative law judge erred in failing to find a severe mental health impairment(s), the plaintiff fails to demonstrate that the error was harmful, *see, e.g., LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *3 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010) ("[I]n this district, assuming that an error has been made at Step 2 in failing to find a particular impairment to be severe, that error is uniformly considered harmless, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

The plaintiff made no such argument in her statement of errors. *See generally* Statement of Errors. At oral argument, her counsel contended that the presentation to a vocational expert of a hypothetical question containing the restrictions found by Drs. Gates and Thomas would have

impacted her case.  But he did not explain how.  In any event, the plaintiff waived that argument by failing to include it in her statement of errors.  *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

At oral argument, the plaintiff's counsel also disputed a contention by the commissioner, both in her brief and at oral argument, that the testimony of the vocational expert at hearing affirmatively shows that any error in failing to find a severe mental impairment(s) was harmless. *See* Opposition at 10-11.  Specifically, he took issue with the commissioner's characterization of a hypothetical question relayed to the vocational expert as incorporating limitations "very similar" to those found by Dr. Gates.  *See id.*; *see also* Record at 48-50.

Assuming, without deciding, that the plaintiff is correct, it is of no moment.  The plaintiff bore the burden of showing that any Step 2 error would necessarily change the outcome of her claim; the commissioner did not bear the burden of disproving it.  *See, e.g., LaBonte*, 2010 WL 2024895, at *3.  The plaintiff failed to meet that burden.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum*

*and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of July, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge